## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| DONNIE SOUTH, DAVEN CHAPA, RUSSELL RICHMAN, NICHOLAS BALTHROP, CLARK COLE, JAMES MOODY, JAMES CROUCH, ROBERT MANESS, JEFFREY THOMPSON, MATT LEWIS, and JIMMY MARTIN, | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Plaintiffs, | § | CIVIL ACTION NO. 3:16-CV-00371-M |
| | § | |
| v. | §<br>§ | |
| BARNETT OUTDOORS LLC, ACADEMY, LTD., and BASS PRO OUTDOOR WORLD, L.L.C., | §<br>§<br>§ | |
| Defendants. | §<br>§ | |

### PLAINTIFFS' SECOND AMENDED COMPLAINT

TO THE HONORABLE COURT:

NOW COME Plaintiffs, Donnie South, Daven Chapa, Russell Richman, Nicholas Balthrop, Clark Cole, James Moody, James Crouch, Robert Maness, Jeffrey Thompson, Matt Lewis, and Jimmy Martin (collectively referred to as "Plaintiffs"), and files this, their Second Amended Complaint complaining of and about Defendants Barnett Outdoors, LLC ("Barnett Outdoors") and Bass Pro Outdoor World, L.L.C., ("Bass Pro"), and for causes of action would respectfully show unto the Court the following:

### I.
### PARTIES

1.      Plaintiff Donnie South makes his primary, permanent home in Texas and is domiciled in Texas.

2.      Plaintiff Daven Chapa makes his primary, permanent home in Texas and is domiciled in Texas.

**PLAINTIFFS' SECOND AMENDED COMPLAINT**                                                    **Page 1**

3.    Plaintiff Russell Richman makes his primary, permanent home in Texas and is domiciled in Texas.

4.    Plaintiff Nicholas Balthrop makes his primary, permanent home in Texas and is domiciled in Texas.

5.    Plaintiff Clark Cole makes his primary, permanent home in Texas and is domiciled in Texas.

6.    Plaintiff James Moody makes his primary, permanent home in Texas and is domiciled in Texas.

7.    Plaintiff James Crouch makes his primary, permanent home in Texas and is domiciled in Texas.

8.    Plaintiff Robert Maness makes his primary, permanent home in Texas and is domiciled in Texas.

9.    Plaintiff Jeffrey Thompson makes his primary, permanent home in Texas and is domiciled in Texas.

10.    Plaintiff Matt Lewis makes his primary, permanent home in Texas and is domiciled in Texas.

11.    Plaintiff Jimmy Martin makes his primary, permanent home in Oklahoma and is domiciled in Oklahoma.

12.    Defendant Barnett Outdoors, LLC has appeared herein. (*See* Doc. 16, Defendants' First Amended Notice of Removal)

13.    Defendant Bass Pro Outdoor World, L.L.C ("Bass Pro") has appeared herein. (*See* Doc. 16, Defendants' First Amended Notice of Removal)

## II.

## <u>JURISDICTION AND VENUE</u>

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity as Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs. Plaintiffs adopt and incorporate by reference "Diversity Facts" as set forth in paragraphs 12-16 in Defendants' First Amended Notice of Removal (Doc. 16).

15.     Plaintiffs Donnie South and Jimmy Martin make allegations against Barnett and Bass Pro only. Complete diversity exists between Plaintiffs South and Martin, on the one hand, and Barnett and Bass Pro on the other hand, and the amount in controversy exceeds $75,000.00. Therefore, diversity jurisdiction exists.

16.     Plaintiffs Daven Chapa, Russell Richman, Nicholas Balthrop, Clark Cole, James Moody, James Crouch, Robert Maness, Jeffrey Thompson, and Matt Lewis make allegations against Barnett only. Complete diversity exists between Plaintiffs Chapa, Richman, Balthrop, Cole, Moody, Crouch, Maness, Thompson, and Lewis, on the one hand, and Barnett on the other hand, and the amount in controversy exceeds $75,000.00. Therefore, diversity jurisdiction exists.

17.     All parties agree to venue in the judicial district for the Northern District of Texas.

## III.
## FACTUAL BACKGROUND

### SOUTH

18.     On or about October 10, 2015, Donnie South was using a Barnett Jackal Crossbow (the "Crossbow") in Texas. Defendant Barnett Outdoors manufactured, marketed, and distributed the Crossbow and its component parts.

19.     As Plaintiff attempted to shoot the Crossbow on or about October 10, 2015, suddenly and without warning, the string of the Crossbow struck Plaintiff's thumb, and severing his left thumb, nerve and cuticle, causing severe damage thereto.

20.     There were no safety warnings, safety labels, or finger guards on the Crossbow when it was purchased, to warn and protect purchasers and users of the Crossbow, such as Plaintiff, of the unreasonably dangerous condition of the Crossbow and/or precluding purchasers and users from placing a thumb above the rail of the Crossbow. The Crossbow was also lacking a bar or other benchmark that would prevent a user's thumb or other finger from slipping or otherwise moving up and in the way of the string of the Crossbow.

21.     Neither Plaintiff nor any other person altered or repaired the Crossbow after it was purchased. The Crossbow was defective at the time it was manufactured and sold. Defendant Barnett was or should have been aware of the defect in the Crossbow it designed, manufactured, sold and marketed.

22.     When Defendant Bass Pro sold the defective Crossbow, Defendant Bass Pro knew or should have known that the Crossbow was defective and could cause severe damage similar to Plaintiff's. Yet, Defendant Bass Pro sold the defective Crossbow anyway.

23.     As a direct result of this unreasonably dangerous product, Plaintiff has experienced extreme and excruciating pain and suffering, emotional distress and mental anguish, as well as substantial medical expenses, disfigurement, deformity, and scarring, for which he seeks damages.

## CHAPA

24.     On or about October 29, 2015, Plaintiff Chapa was using a Barnett Predator Crossbow (the "Crossbow") in Texas. Defendant Barnett Outdoors manufactured, marketed, and distributed the Crossbow and its component parts.

25.     As Plaintiff attempted to shoot the Crossbow on or about October 2015, suddenly and without warning, the string of the Crossbow struck Plaintiff's thumb, and severing his left thumb, nerve and cuticle, causing severe damage thereto.

26.     The single safety warning on the Crossbow was extremely inadequate, when it was purchased, to warn and protect purchasers and users of the Crossbow, such as Plaintiff, of the unreasonably dangerous condition of the Crossbow. Further, the Crossbow was also lacking a bar, guard, or benchmark when it was purchased, that would warn and/or prevent a user's thumb or other finger from slipping or otherwise moving up and in the way of the string of the Crossbow.

27.     Neither Plaintiff nor any other person altered or repaired the Crossbow after it was purchased. The Crossbow was defective at the time it was manufactured and sold. Defendant Barnett was or should have been aware of the defect in the Crossbow it designed, manufactured, sold and marketed.

28.     As a direct result of this unreasonably dangerous product, Plaintiff has experienced extreme and excruciating pain and suffering, emotional distress and mental anguish,

as well as substantial medical expenses, disfigurement, deformity, and scarring, for which he seeks damages.

## RICHMAN

29.     On or about November 8, 2014, Richman was using a Barnett Quad 400 Crossbow (the "Crossbow") in Texas. Defendant Barnett Outdoors manufactured, marketed, and distributed the Crossbow and its component parts.

30.     As Plaintiff attempted to shoot the Crossbow on or about November 8, 2014, suddenly and without warning, the string of the Crossbow struck Plaintiff's right thumb, fracturing the bone, lacerating the skin and nerves, and causing severe damage thereto.

31.     There were no safety warnings, safety labels, or finger guards on the Crossbow when it was purchased, to warn and protect purchasers and users of the Crossbow, such as Plaintiff, of the unreasonably dangerous condition of the Crossbow and/or precluding purchasers and users from placing a thumb above the rail of the Crossbow. The Crossbow was also lacking a bar, guard, or other benchmark that would prevent a user's thumb or other finger from slipping or otherwise moving up and in the way of the string of the Crossbow.

32.     Neither Plaintiff nor any other person altered or repaired the Crossbow after it was purchased. The Crossbow was defective at the time it was manufactured and sold. Defendant Barnett was or should have been aware of the defect in the Crossbow it designed, manufactured, sold and marketed.

33.     As a direct result of this unreasonably dangerous product, Plaintiff has experienced extreme and excruciating pain and suffering, emotional distress and mental anguish, as well as lost wages and substantial medical expenses, disfigurement, deformity, and scarring, for which he seeks damages.

**BALTHROP**

34.     On or about September 3, 2014, Balthrop, was using a Barnett Jackal Crossbow (the "Crossbow") in Texas. Defendant Barnett Outdoors manufactured, marketed, and distributed the Crossbow and its component parts.

35.     As Plaintiff attempted to shoot the Crossbow on or about September 3, 2014, suddenly and without warning, the string of the Crossbow struck Plaintiff's thumb, causing severe damage thereto.

36.      There were no safety warnings, safety labels, or finger guards on the Crossbow when it was purchased, to warn and protect purchasers and users of the Crossbow, such as Plaintiff, of the unreasonably dangerous condition of the Crossbow and/or precluding purchasers and users from placing a thumb above the rail of the Crossbow. The Crossbow was also lacking a bar, guard, or other benchmark that would prevent a user's thumb or other finger from slipping or otherwise moving up and in the way of the string of the Crossbow.

37.     Neither Plaintiff nor any other person altered or repaired the Crossbow after it was purchased. The Crossbow was defective at the time it was manufactured and sold. Defendant Barnett was or should have been aware of the defect in the Crossbow it designed, manufactured, sold and marketed.

38.     As a direct result of this unreasonably dangerous product, Plaintiff has experienced extreme and excruciating pain and suffering, emotional distress and mental anguish, as well as substantial medical expenses, disfigurement, deformity, and scarring, for which he seeks damages.

## COLE

39.     On or about October 18, 2014, Cole, was using a Barnett Quad 400 Crossbow (the "Crossbow") in Texas. Defendant Barnett Outdoors manufactured, marketed, and distributed the Crossbow and its component parts.

40.     As Plaintiff attempted to shoot the Crossbow on or about October 18, 2014 suddenly and without warning, the string of the Crossbow struck Plaintiff's left thumb, lacerated the thumb, thumbnail and bone, fractured the bone, severed nerves, and caused severe damage thereto.

41.      There were no safety warnings, safety labels, or finger guards on the Crossbow when it was purchased, to warn and protect purchasers and users of the Crossbow, such as Plaintiff, of the unreasonably dangerous condition of the Crossbow and/or precluding purchasers and users from placing a thumb above the rail of the Crossbow. The Crossbow was also lacking a bar, guard, or other benchmark that would prevent a user's thumb or other finger from slipping or otherwise moving up and in the way of the string of the Crossbow.

42.     Neither Plaintiff nor any other person altered or repaired the Crossbow after it was purchased. The Crossbow was defective at the time it was manufactured and sold. Defendant Barnett was or should have been aware of the defect in the Crossbow it designed, manufactured, sold and marketed.

43.     As a direct result of this unreasonably dangerous product, Plaintiff has experienced extreme and excruciating pain and suffering, emotional distress and mental anguish, as well as substantial medical expenses, disfigurement, deformity, and scarring, for which he seeks damages.

## MOODY

44.    On or about September 1, 2014 Moody, was using a Barnett Quad 400 Crossbow (the "Crossbow") in Texas. Defendant Barnett Outdoors manufactured, marketed, and distributed the Crossbow and its component parts.

45.    As Plaintiff attempted to shoot the Crossbow on or about September 1, 2014, suddenly and without warning, the string of the Crossbow struck Plaintiff's left thumb, amputating it below the nail bed, severing nerves, and causing severe damage thereto.

46.     There were no safety warnings, safety labels, or finger guards on the Crossbow when it was purchased, to warn and protect purchasers and users of the Crossbow, such as Plaintiff, of the unreasonably dangerous condition of the Crossbow and/or precluding purchasers and users from placing a thumb above the rail of the Crossbow. The Crossbow was also lacking a bar, guard, or other benchmark that would prevent a user's thumb or other finger from slipping or otherwise moving up and in the way of the string of the Crossbow.

47.    Neither Plaintiff nor any other person altered or repaired the Crossbow after it was purchased. The Crossbow was defective at the time it was manufactured and sold. Defendant Barnett was or should have been aware of the defect in the Crossbow it designed, manufactured, sold and marketed.

48.    As a direct result of this unreasonably dangerous product, Plaintiff has experienced extreme and excruciating pain and suffering, emotional distress and mental anguish, as well as lost wages and substantial medical expenses, disfigurement, deformity, and scarring, for which he seeks damages.

**CROUCH**

49.     On or about October 7, 2014, Crouch, was using a Barnett Quad 300 Crossbow (the "Crossbow") in Texas. Defendant Barnett Outdoors manufactured, marketed, and distributed the Crossbow and its component parts.

50.     As Plaintiff attempted to shoot the Crossbow on or about October 7, 2014, suddenly and without warning, the string of the Crossbow struck Plaintiff's thumb, lacerating the thumb, breaking the bone, severing nerves, and causing severe damage thereto.

51.      There were no safety warnings, safety labels, or finger guards on the Crossbow when it was purchased, to warn and protect purchasers and users of the Crossbow, such as Plaintiff, of the unreasonably dangerous condition of the Crossbow and/or precluding purchasers and users from placing a thumb above the rail of the Crossbow. The Crossbow was also lacking a bar, guard, or other benchmark that would prevent a user's thumb or other finger from slipping or otherwise moving up and in the way of the string of the Crossbow.

52.     Neither Plaintiff nor any other person altered or repaired the Crossbow after it was purchased. The Crossbow was defective at the time it was manufactured and sold. Defendant Barnett was or should have been aware of the defect in the Crossbow it designed, manufactured, sold and marketed.

53.     As a direct result of this unreasonably dangerous product, Plaintiff has experienced extreme and excruciating pain and suffering, emotional distress and mental anguish, as well as substantial medical expenses, disfigurement, deformity, and scarring, for which he seeks damages.

## MANESS

54.     On or about October 26, 2014, Maness, was using a Barnett Jackal Crossbow (the "Crossbow") in Texas. Defendant Barnett Outdoors manufactured, marketed, and distributed the Crossbow and its component parts.

55.     As Plaintiff attempted to shoot the Crossbow on or about October 26, 2014, suddenly and without warning, the string of the Crossbow struck Plaintiff's left thumb, lacerating the skin to the bone, severing nerves, and causing severe damage thereto.

56.      There were no safety warnings, safety labels, or finger guards on the Crossbow when it was purchased, to warn and protect purchasers and users of the Crossbow, such as Plaintiff, of the unreasonably dangerous condition of the Crossbow and/or precluding purchasers and users from placing a thumb above the rail of the Crossbow. The Crossbow was also lacking a bar, guard, or other benchmark that would prevent a user's thumb or other finger from slipping or otherwise moving up and in the way of the string of the Crossbow.

57.     Neither Plaintiff nor any other person altered or repaired the Crossbow after it was purchased. The Crossbow was defective at the time it was manufactured and sold. Defendant Barnett was or should have been aware of the defect in the Crossbow it designed, manufactured, sold and marketed.

58.     As a direct result of this unreasonably dangerous product, Plaintiff has experienced extreme and excruciating pain and suffering, emotional distress and mental anguish, as well as lost wages and substantial medical expenses, disfigurement, deformity, and scarring, for which he seeks damages.

**THOMPSON**

59.     On or about June 27, 2015, Thompson, was using a Barnett Penetrator Crossbow (the "Crossbow") in Texas. Defendant Barnett Outdoors manufactured, marketed, and distributed the Crossbow and its component parts.

60.     As Plaintiff attempted to shoot the Crossbow on or about June 27, 2015, suddenly and without warning, the string of the Crossbow struck Plaintiff's left thumb, lacerating the the thumb, thumbnail, nerves, and cuticle, and causing severe damage thereto.

61.      There were no safety warnings, safety labels, or finger guards on the Crossbow when it was purchased, to warn and protect purchasers and users of the Crossbow, such as Plaintiff, of the unreasonably dangerous condition of the Crossbow and/or precluding purchasers and users from placing a thumb above the rail of the Crossbow. The Crossbow was also lacking a bar, guard, or other benchmark that would prevent a user's thumb or other finger from slipping or otherwise moving up and in the way of the string of the Crossbow.

62.     Neither Plaintiff nor any other person altered or repaired the Crossbow after it was purchased. The Crossbow was defective at the time it was manufactured and sold. Defendant Barnett was or should have been aware of the defect in the Crossbow it designed, manufactured, sold and marketed.

63.     As a direct result of this unreasonably dangerous product, Plaintiff has experienced extreme and excruciating pain and suffering, emotional distress and mental anguish, as well as lost wages and substantial medical expenses, disfigurement, deformity, and scarring, for which he seeks damages.

**LEWIS**

64.    On or about October 6, 2015, Lewis, was using a Barnett Quad 400 Crossbow (the "Crossbow") in Texas. Defendant Barnett Outdoors manufactured, marketed, and distributed the Crossbow and its component parts.

65.    As Plaintiff attempted to shoot the Crossbow on or about October 6, 2015, suddenly and without warning, the string of the Crossbow struck Plaintiff's left index finger, causing severe damage thereto.

66.     There were no safety warnings, safety labels, or finger guards on the Crossbow when it was purchased, to warn and protect purchasers and users of the Crossbow, such as Plaintiff, of the unreasonably dangerous condition of the Crossbow and/or precluding purchasers and users from placing a thumb above the rail of the Crossbow. The Crossbow was also lacking a bar, guard, or other benchmark that would prevent a user's thumb or other finger from slipping or otherwise moving up and in the way of the string of the Crossbow.

67.    Neither Plaintiff nor any other person altered or repaired the Crossbow after it was purchased. The Crossbow was defective at the time it was manufactured and sold. Defendant Barnett was or should have been aware of the defect in the Crossbow it designed, manufactured, sold and marketed.

68.    As a direct result of this unreasonably dangerous product, Plaintiff has experienced extreme and excruciating pain and suffering, emotional distress and mental anguish, as well as lost wages and substantial medical expenses, disfigurement, deformity, and scarring, for which he seeks damages.

## MARTIN

69. On or about August 27, 2015, Martin, was using a Barnett Jackal Crossbow (the "Crossbow") in Oklahoma. Defendant Barnett Outdoors manufactured, marketed, and distributed the Crossbow and its component parts.

70. As Plaintiff attempted to shoot the Crossbow on or about August 27, 2015, suddenly and without warning, the string of the Crossbow struck Plaintiff's left thumb, lacerating the thumb and nerves, and causing severe damage thereto.

71. There were no safety warnings, safety labels, or finger guards on the Crossbow when it was purchased, to warn and protect purchasers and users of the Crossbow, such as Plaintiff, of the unreasonably dangerous condition of the Crossbow and/or precluding purchasers and users from placing a thumb above the rail of the Crossbow. The Crossbow was also lacking a bar, guard, or other benchmark that would prevent a user's thumb or other finger from slipping or otherwise moving up and in the way of the string of the Crossbow.

72. Neither Plaintiff nor any other person altered or repaired the Crossbow after it was purchased. The Crossbow was defective at the time it was manufactured and sold. Defendant Barnett was or should have been aware of the defect in the Crossbow it designed, manufactured, sold and marketed.

73. When Defendant Bass Pro sold the defective Crossbow to Plaintiff Martin in Oklahoma City, Oklahoma, Defendant Bass Pro knew or should have known that the Crossbow was defective and could cause severe damage similar to Plaintiff's. Yet, Defendant Bass Pro sold the defective Crossbow anyway.

74. As a direct result of this unreasonably dangerous product, Plaintiff has experienced extreme and excruciating pain and suffering, emotional distress and mental anguish,

as well as lost wages and substantial medical expenses, disfigurement, deformity, and scarring, for which he seeks damages.

## IV.
## CAUSES OF ACTION AGAINST DEFENDANT BARNETT OUTDOORS

### A. Strict Products Liability

75.     Plaintiffs incorporate herein all allegations in Paragraphs 1 through 74 above in all counts and allegations below.

76.     At all material times hereto, Defendant Barnett Outdoors was a "manufacturer" of the Crossbows, as defined in Chapter 82.001(3) of the Texas Civil Practices and Remedies Code.

77.     At all material times hereto, Defendants were in the business of designing, testing, approving, manufacturing, marketing, distributing, and/or selling the Crossbows that are made the basis of this lawsuit into interstate commerce, and did in fact design, test, approve, manufacture, market, distribute, and/or sell and place the Crossbows into the stream of commerce. Defendant's conduct in distributing and/or selling the Crossbows was solely for commercial purposes.

78.     When the Crossbows left Defendants' control and were placed into the stream of commerce, the Crossbows were unreasonably dangerous, not suitable for their intended purpose, and unsafe by reason of Defendants' defective design, manufacture, assembly, testing, inspection, service, marketing, distribution, and/or sale of the Crossbows, and because the Crossbows were marketed, sold and distributed without adequate instructions and/or warnings regarding its defective characteristics. The Crossbows remained unchanged from the time they were originally manufactured, distributed and sold by Defendants until they reached Plaintiffs.

79.     Furthermore, at the time the Crossbows were placed into the stream of commerce, Defendants intended that the Crossbows would reach members of the public, such as Plaintiffs,

**PLAINTIFFS' SECOND AMENDED COMPLAINT**                                   **Page 15**

and it was, or should have been reasonably expected and foreseeable that the Crossbows would be used by persons such as Plaintiffs in the manner and application in which they were being used at the time of Plaintiffs' injuries, with the expectation and belief that the Crossbows were safe for their intended use.

80.     On the occasions in question, the Crossbows were being operated and used for the purpose and in the manner for which they were designed, manufactured, assembled, tested, inspected, serviced, marketed, distributed, sold and intended to be used, and in a manner foreseeable to Defendants and for which adequate and safe instructions and warnings were required to be issued.

81.     Defects in the design, manufacture, assembly, instructions, manuals, and warnings, testing, inspection, service, distribution, and/or sale of the Crossbows, including but not limited to the lack of a bar, benchmark, or finger guard on the Crossbows, as well as lack of warning of the dangers thereof, caused the string of the Crossbows to suddenly and without warning sever Plaintiffs' thumbs, thumbnails, knuckle, nerves, and/or cuticles, resulting in injuries to Plaintiffs. Plaintiffs had no knowledge of this defective condition and had no reason to suspect that the Crossbows were unreasonably dangerous prior to their injuries. Defendant Barnett Outdoors, however, knew, or in the exercise of ordinary care should have known, of the Crossbows' defective design and lack of finger guard. Additionally, Defendant Barnett Outdoors failed to provide adequate warning of the dangers presented by its product as designed and manufactured.

82.     There were technologically and economically feasible alternative designs available at the time the Crossbows left the control of Defendant Barnett Outdoors that were safer than the subject design and there were potential means of warning available that would

**PLAINTIFFS' SECOND AMENDED COMPLAINT**                                    **Page 16**

have prevented or significantly reduced the risk of Plaintiffs' injuries without substantially impairing the utility of the Crossbows.

83.     By reason of the foregoing, the Crossbows were dangerous to an extent beyond which would be contemplated by the ordinary consumer who uses it, and Defendant Barnett Outdoors is strictly liable for the damages sustained by Plaintiff. *See Restatement (Second) of Torts* Sections 402A.

84.     As a result of the injuries to Plaintiffs, Plaintiffs have sustained damages and are entitled to recover all fair and just compensatory damages allowed by law, including past and future medical expenses, pain and suffering, future lost wages and lost earning capacity, impairment, disfigurement, deformity, scarring, pain and suffering and mental anguish, and other damages.

### B. Negligence

85.     Plaintiffs incorporate herein the allegations in Paragraphs 1 through 84 above in all counts and allegations below.

86.     On the occasions in question, Barnett Outdoors owed Plaintiffs a duty to exercise reasonable care in the design, manufacture, assembly, testing, inspection, servicing, marketing, distributing, and/or sale of the Crossbows. Barnett Outdoors further owed Plaintiffs a duty of care to warn of any condition regarding the Crossbows that could and did render the Crossbows unsafe.

87.     The injuries to Plaintiffs and resulting damages were proximately caused by the negligence of Barnett Outdoors, by and through its officers, agents, employees, servants and others under its employ and control, in that it breached the aforesaid duties by carelessly failing to properly design, manufacture, assemble, test, inspect, service, market, distribute and sell the

Crossbows. Barnett Outdoors further breached its duties to Plaintiffs by failing to detect, correct and/or warn or instruct about the dangerous and unsafe characteristics of the Crossbows.

88.     Specifically, Defendant Barnett Outdoors' acts of negligence include, but are not limited to the following:

>    (a)    Negligently designing the Crossbows such that a person using the Crossbows in a foreseeable manner could place his or her finger above the rail of the Crossbows;
>
>    (b)    Negligently designing the Crossbows without a bar, benchmark, or finger guard that would prevent a user's fingers from moving up and in the way of the string of the Crossbows;
>
>    (c)    Negligently marketing the Crossbows as safe to use without a finger guard;
>
>    (d)    Negligently marketing the Crossbows by promoting their use without a finger guard;
>
>    (e)    Negligently marketing the Crossbows by failing to adequately warn consumers of the risks and dangers associated with using the Crossbows without finger guards, despite Barnett Outdoors's actual or constructive knowledge that consumers could place, and had placed, their fingers above the rail of the Crossbows;
>
>    (f)    Negligently failing to test the Crossbows to ensure that consumers using them in a foreseeable manner could not place their fingers above the rail of the Crossbows; and
>
>    (g)    Negligently failing to warn Plaintiffs, after the Crossbows had been purchased, that the products were unreasonably dangerous and defectively designed in that they posed a serious risk to consumers.

89.     As the manufacturer of the Crossbows, Defendant Barnett Outdoors had a duty to exercise reasonable care in the design, testing, marketing, warning, and sale of the products. As the foregoing makes clear, Defendant Barnett Outdoors wholly failed in the exercise of its duties to Plaintiffs.

90.     As set forth herein, Barnett Outdoors proximately caused the injuries to Plaintiffs. As a result of the injuries to Plaintiffs, each Plaintiff has sustained damages and is entitled to recover all damages as set forth below.

91.     At the time of the incident made basis of this suit, the Crossbows were in substantially the same condition as they were when they were placed into the stream of commerce. Neither Plaintiffs nor any other persons made any modifications to the Crossbows after they were purchased.

### C. Breach of Warranty

92.     Plaintiffs incorporates herein the allegations in Paragraphs 1 through 91 above in all counts and allegations below.

93.     Barnett Outdoors made express warranties as to the Crossbows. Barnett Outdoors specifically warranted that the Crossbows' stocks, trigger mechanisms and limb assemblies would be free from defects in material and workmanship. Under its warranty, Barnett Outdoors agreed to repair and/or replace the warranted components during the period specified. However, the Crossbows in fact were not of the quality or condition expressly warranted by Barnett's affirmations, and were defective. Barnett Outdoors breached its express warranty by providing Plaintiffs with Crossbows containing defective finger guards, and refusing to recall the Crossbows containing such defects even after sufficient knowledge that there was a defect that could potentially cause harm to consumers such as Plaintiffs.

94.     Barnett Outdoors also impliedly represented and warranted to the public generally, and to Plaintiffs specifically, that the Crossbows were safe, free from defects, of merchantable quality, and/or fit for their intended purpose. Barnett Outdoors warranted it would provide Plaintiffs with a Crossbow that was in proper working order and that was fit for its

intended purpose. Barnett Outdoors breached these representations and implied warranties because the Crossbows were defective and unsafe for Plaintiffs to use.

95.     As a result of the foregoing, Plaintiffs have suffered damages that were directly and proximately caused by the Crossbows. Plaintiffs are therefore entitled to damages as set forth below.

## V.
## CAUSE OF ACTION AGAINST DEFENDANT BASS PRO

96.     Plaintiffs South and Martin incorporate herein the allegations in Paragraphs 1 through 95 above in all counts and allegations below.

97.     Upon information and belief, Defendant Bass Pro is strictly liable for the injuries of Donnie South and Jimmy Martin pursuant to Section 82.003 of the Texas Civil Practice and Remedies Code. Said Plaintiffs have reason to believe that the actions of Bass Pro at all times material hereto fell within the circumstances set forth in Section 82.003, under which a seller of a defective product is liable for the harm caused by the product. Specifically, that Defendants' actions fall within the exceptions set forth in Section 82.003 parts (5) and (6).

98.     Upon information and belief, Defendant Bass Pro knew of the defect in the Crossbows at issue at the time it sold the Crossbows. Defendant knew, among other things, of the similar previous thumb injuries users of that type of crossbow had sustained when operating them due to the crossbows' failure to contain a thumb-guard or protector. Additionally, Defendant Bass Pro knew that the Crossbows at issue were without a thumb-guard or protector. Plaintiffs' harm resulted from the defect. For this reason, Defendant's actions fall within the purview of Section 82.003(6) and Defendant is liable to Plaintiffs South and Martin under this exception to § 82.003.

99.     Upon information and belief, Defendant expressly represented to its customers that the Crossbows in question were not defective, when in fact this representation was incorrect. Plaintiffs South and Martin relied on said Defendant's representation in obtaining and using the defective Crossbows. Had the Crossbows not been defective and contained a thumb-guard or protector, Plaintiffs would not have suffered the injuries that are the basis of this Complaint while using the Crossbows. Defendant's actions fall within the purview of § 82.003(5) and Defendant Bass Pro is liable to Plaintiffs under this exception to § 82.003.

100.    Furthermore, as more fully set forth herein above, the Crossbows were dangerous to an extent beyond which would be contemplated by the ordinary consumer who purchases it, and said Defendant is strictly liable for the injuries of Plaintiffs South and Martin pursuant to the *Restatement (Second) of Torts Sections* 402A and 402B.

**VI.**
**CONDITIONS PRECEDENT**

101.    All conditions precedent to Plaintiffs' rights to recover from Defendants have been satisfied prior to the filing of this lawsuit.

**VII.**
**DAMAGES**

102.    As stated above, all Plaintiffs seek actual and compensatory damages, both in the past and in the future, including but not limited to medical expenses, pain and suffering, lost wages and earning capacity, impairment, disfigurement, deformity, scarring, mental and emotional anguish, and other damages.

103.    Additionally, all Plaintiffs seek exemplary/punitive damages against each Defendant in accordance with state and/or federal law.

# VIII.
# PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Donnie South, Daven Chapa, Russell Richman, Nicholas Balthrop, Clark Cole, James Moody, James Crouch, Robert Maness, Jeffrey Thompson, Matt Lewis, and Jimmy Martin respectfully request that upon trial of this cause, they recover from Defendants the following relief:

(a)   Judgment against Defendant Barnett Outdoors for actual and compensatory damages incurred by Plaintiffs;

(b)   Judgment against Defendant Barnett Outdoors awarding Plaintiffs pre-judgment and post judgment interest at the maximum rate permitted by law;

(c)   Judgment against Defendant Bass Pro for actual and compensatory damages incurred by Plaintiffs South and Martin;

(d)   Judgment against Defendant Bass Pro awarding Plaintiffs South and Martin pre-judgment and post judgment interest at the maximum rate permitted by law;

(e)   Judgment against each Defendant for exemplary damages as determined by the trier of fact; and

(f)   Such other and further relief to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

_____

**D. BRADLEY KIZZIA**
State Bar No. 11547550
brad@kjpllc.com
**KIZZIA JOHNSON PLLC**
750 N. St. Paul Street, Suite 1320
Dallas, Texas 75201
469.893.9940
214.613.3330 FAX

**DON TITTLE**
State Bar No. 20080200
don@dontittlelaw.com
**Law Offices of Don Tittle, PLLC**
6301 Gaston Avenue, Suite 440
Dallas, Texas  75214
214.522.8400
214.389.1002 FAX

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel certifies that on the _____ day of March, 2016, a true and correct copy of the foregoing was forwarded to all known of record in compliance with the Texas Rules of Civil Procedure.

_____

**D. BRADLEY KIZZIA**